UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYMON C. GARRETT,<br><br>        Petitioner,<br><br>    v.<br><br>JEFFREY BEARD,<br><br>        Respondent. | Case No. CV 13-8966 AG(JC)<br><br>ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

**I.   SUMMARY**

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") and all of the records herein, including the February 6, 2019 Report and Recommendation of United States Magistrate Judge ("Report and Recommendation" or "R&R") and petitioner's objections thereto filed on June 6, 2019 ("Objections"). The Court has made a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The Court concurs with and accepts the findings, conclusions, and recommendations of the United States Magistrate Judge, and overrules the Objections. The Court has considered and overruled all of petitioner's objections, and discusses petitioner's principal objections herein.

///

## II. DISCUSSION

### A. Petitioner's Objection to the Asserted Lack of Opportunity to File a Reply to the Answer

Petitioner claims he was deprived of his statutory right to file a reply to the Answer because he assertedly did not receive respondent's Answer until after the Report and Recommendation was filed. (Objections at 2). The Answer bears a proper proof of service for petitioner's address on record at the time the answer was filed. Compare Answer at 105 with Docket No. 16 (petitioner's most recent filing prior to the Answer showing an address at California State Prison at Corcoran); Petition at 1 (listing same address). In any event, petitioner was aware by December of 2014, by virtue of service upon him and his presumed receipt of the Court's November 21, 2014 order granting respondent's final extension for filing the Answer (Docket No. 30), and the Court's December 8, 2014 order authorizing the filing of an oversized answer (Docket No. 35), that the Answer was due to have been filed on or about December 6, 2014. If petitioner did not receive the Answer, it does not bespeak diligence that petitioner did nothing to alert the Court to that fact or to inquire about why no answer was filed until after the Report and Recommendation was issued in February of 2019. The Court sent petitioner the Answer as soon as he advised he did not have the Answer (see Docket No. 42), extended petitioner's deadline to file objections to the Report and Recommendation on multiple occasions (see Docket Nos. 41-42, 45-48), and accepted petitioner's oversized Objections which the Court presumes contain any arguments petitioner wants the Court to consider in response to the Answer. Petitioner identifies no argument that he would have made in a response to the Answer that he has not also made in the Objections. Accordingly, the Court discerns no prejudice from petitioner's asserted failure timely to receive the Answer or asserted inability to file a separate reply addressing respondent's contentions.

**B. Petitioner's Objections to the Recommended Denial of his Claim under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986)**

Petitioner contends that the state court decisions denying his <u>Batson</u> claim were unreasonable under 28 U.S.C. section 2254(d) because the state courts did not conduct a full comparative juror analysis to evaluate the credibility of the prosecutor's reasons for removing the jurors at issue. <u>See</u> Objections at 3-4; <u>see also</u> Lodged Doc. 18 at 37 (California Court of Appeal noting that under California law it was not required to do a comparative juror analysis for any jurors beyond those whose similarities were argued before the trial court).

There is no clearly established federal law requiring that the state court conduct a comparative juror analysis. <u>See</u> R&R at 35-36 (citing, *inter alia*, <u>Murray v. Schriro</u>, 745 F.3d 984, 1005 (9th Cir. 2014) ("<u>Batson</u> and the cases that follow it do not require trial courts to conduct a comparative juror analysis. . . . [A federal habeas court] conduct[s] its own formal comparative juror analysis to make factual comparisons with the state court's factual determinations. Thus, [a habeas court] us[es] a formal comparative juror analysis to review the *reasonableness* of the factual determinations underlying the state court's decision. . . . [I]n order for *us* to discharge our responsibility under AEDPA to review a <u>Batson</u> claim under section 2254(d)(2), we often will have to conduct a formal comparative juror analysis, and our responsibility to conduct a comparative juror analysis is not contingent on whether the state court previously performed or did not perform a comparative juror analysis.") (emphasis original)). Hence, the state courts' comparative juror analysis limited to those jurors whose similarities were argued before the trial court could not have been an unreasonable under 28 U.S.C. section 2254(d)(1).

Based on this Court's own extensive comparative juror analysis, the state courts' denial of petitioner's <u>Batson</u> claim was not an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. section 2254(d)(2). <u>See</u> R&R at 37-50. Contrary to petitioner's conclusory allegations (Objections at

4-5), the state courts considered the merits of petitioner's claim and reasonably found that the prosecutor's race-neutral reasons were genuine. The fact that petitioner disagrees with this conclusion does not mean that he was denied due consideration.

### C. Petitioner's Objections to the Recommended Denial of His Jury Instruction Claim

Petitioner contends that the trial court's failure *sua sponte* to give an instruction that accomplice testimony must be corroborated, as it related to Gray's testimony implicating petitioner in the charged crimes, deprived petitioner of the right to present a complete defense. (Objections at 5-7, 11, 13). Petitioner argues that the harm from the failure to give the instruction is evident from the fact that petitioner's first trial ended in a mistrial and the jury in the second trial deliberated for a considerable amount of time. (Objections at 5). Petitioner also argues that the California Court of Appeal applied the wrong harmless error standard to his claim. See Objections at 6, 11-12 (citing Chapman v. California, 386 U.S. 18, 24 (1967)). These objections do not alter the Court's conclusion that petitioner suffered no prejudicial error from the failure to instruct the jury with CALCRIM 335.

First, it does not appear that the Court of Appeal relied on the harmless error standard set forth in Chapman in denying this claim. See Lodged Doc. 18 at 20 (finding no harm from the failure to instruct because there was sufficient corroborating evidence in the record supporting Gray's testimony; citing People v. Miranda, 44 Cal. 3d 57, 100 (1987) and People v. Williams, 49 Cal. 4th 405, 456 (2010), which do not apply Chapman). Whatever standard the Court of Appeal applied, on federal habeas review the Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) standard applies: a constitutional trial error justifies habeas relief only if the error had a substantial and injurious impact in determining the jury's verdict. See R&R at 66-67, 69 (finding petitioner had failed to show the instructional error

was harmful under Brecht, and therefore the Court of Appeal's harmlessness finding was not unreasonable). "[T]he Brecht standard 'subsumes' the requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless under Chapman." Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (habeas court must assess prejudice under Brecht, "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman").

Second, "[n]o clearly established federal law, as determined by the Supreme Court, holds that a state court's failure to give a pinpoint jury instruction on the defense theory of the case violates a criminal defendant's due process right to 'be afforded a meaningful opportunity to present a complete defense.'" Larsen v. Paramo, 700 Fed. App'x 594, 596 (9th Cir.) (citations omitted), cert. denied, 138 S. Ct. 483 (2017). Petitioner's citation to Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999) (evaluated under pre-AEDPA standards, noting "It is well established that a criminal defendant is entitled to adequate instructions on a defense theory of the case.") (see Objections at 13), is not contrary, since the case is not a Supreme Court decision and concerned federal criminal procedure, not the requirements of the Constitution. See Glebe v. Frost, 574 U.S. 21 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitution 'clearly established Federal law, as determined by the Supreme Court'"). While the Supreme Court has recognized the right to instructions as to any recognized defense for which there exists sufficient evidence to present to the jury, that case was a direct appeal of a federal criminal conviction. See Mathews v. United States, 485 U.S. 58, 63, 69 (1988) (White, J., dissenting) ("The Court properly recognizes that its result is not compelled by the Constitution.").

Although the defense was prevented from arguing the specific jury

instruction that an accomplice's testimony should be viewed with caution and must be corroborated to be considered, defense counsel was able to argue that Gray's testimony was unreliable for the same reasons that an accomplice's testimony generally is to be viewed with caution (*i.e.*, Gray had reason to lie because Gray had been identified as the shooter (RT 4596-97), and Gray had been given immunity for his testimony (RT 4597)).  Counsel also argued that Gray's testimony was "wholly inconsistent" with the testimony of several eyewitnesses whose testimony was corroborated.  (RT 4591-96, 4605-07).  Petitioner has not shown that the trial court's failure to instruct the jury with CALCRIM 335 violated his right to present a meaningful defense.

Third, while petitioner argues here, as he did at trial (see RT 4591-96, 4605-07) that the weight of the eyewitness evidence (as compared to Gray's testimony) did not implicate petitioner in the charged crimes (see Objections at 10), the jury was presented with the same argument which the jury rejected by its verdicts. Petitioner has not shown a reasonable likelihood of a different outcome at trial if the trial court had instructed the jury, consistent with defense counsel's argument, that Gray's testimony should be viewed with caution.

### D. Petitioner's Objections to the Recommended Denial of His Ineffective Assistance of Counsel Claims

Petitioner contends that his trial counsel was ineffective for pursuing defenses which assertedly did not comport with petitioner's insistence that he did not commit the charged crimes, see Objections at 14-15 (citing McCoy v. Louisiana, 138 S. Ct. 1500 (2018)), and for failing to move to sever his case from Sorrels's case (Objections at 18-19).  Petitioner argues as he did in the Petition (see Petition Memo at 62-64 & Exhibits A & B), that he told counsel there were witnesses who would testify that petitioner was home on the night of the shooting and that counsel did not present any witnesses for this defense, which would have given the jury some basis for accepting his alibi. (Objections at 15-16, 20-27 &

Exhibits 1 & 4).  Petitioner faults the Magistrate Judge's analysis of his ineffectiveness claim as "speculation" about trial counsel's strategic decisions. See Objections at 16-18, 19, 24 (citing, *inter alia*, Johnson v. California, 545 U.S. 162, 173 (2005), as criticizing "judicial speculation").  Petitioner asks that the Court take judicial notice that his trial counsel was disbarred in 2015.  (Objections at 15 & Exhibit 2).  These objections do not alter the Court's analysis.

First, the Johnson case is inapposite.  Johnson involved a Batson claim where the Supreme Court noted that state cases resolving Batson claims illustrate the "imprecision of relying on judicial speculation to resolve plausible claims of discrimination" at the first step of the Batson analysis under then-existing California law, without reaching the next step asking prosecutors to provide reasons for striking jurors.  Johnson, 545 U.S. at 173 (finding less onerous Batson prima facie analysis should apply).  Johnson provides no guidance for reviewing Strickland claims.

Second, the McCoy case is distinguishable.  In McCoy, the Supreme Court found that trial counsel violated the defendant's right to "protected autonomy" by admitting the defendant's guilt in a capital murder case to try to avoid the death penalty, where the defendant strenuously had objected to the admission.  Such was structural error, not subject to analysis under Strickland v. Washington, 466 U.S. 668 (1984).  See McCoy, 138 S. Ct. at 1510-12.  Here, unlike counsel in McCoy, petitioner's counsel maintained petitioner's innocence and focused on the lack of witnesses or evidence tying petitioner to the charged crimes, and argued to the jury that Gray's testimony implicating petitioner should not be believed.  (RT 4591-97, 4605-07).  While counsel did not present the witnesses petitioner now claims counsel should have presented for an alibi defense, counsel did argue petitioner's innocence.  It was counsel's reasonable decision not to present alibi witnesses,
///

whose credibility would be in question, and instead to focus on challenging the strength of the prosecution's case linking petitioner to the charged crimes.

What petitioner labels as the Magistrate Judge's "speculation" about counsel's strategic decisions for failing to present an alibi defense and failing to move to sever petitioner's trial is precisely the type of deferential analysis the Supreme Court has instructed habeas courts to conduct for ineffective assistance claims. See Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls withing the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted). Petitioner has not overcome the presumption that his counsel's representation was competent for the reasons cited by the Magistrate Judge. (R&R at 82-89).

The Court has taken judicial notice of counsel's California State Bar disciplinary proceedings and disbarment. See Attorney Licensee Profile for Ronald White, Cal. Bar No. 85723 ("Profile"), and linked decisions, available at http://members.calbar.ca.gov/fal/licensee/detail/85723 (last visited June 19, 2019); see also Fed. R. Evid. 201; Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts). The Profile reports that counsel was first disciplined in 2002. On November 18, 2011, counsel again was disciplined for failing to return a client's file upon request so the client could pursue a habeas corpus petition, failing to keep a client informed of the status of a

criminal appeal, and failing to cooperate with the State Bar's investigation. On January 8, 2015, counsel was disbarred based on counsel's handling of his client trust account. See Decision in In re White, Cal. Bar Court Case No. 12-O-15405, linked to counsel's Profile. Counsel's State Bar proceedings are not sufficient evidence to rebut the assumption that counsel's conduct at issue was the result of a tactical decision. Compare Sanders v. Ratelle, 21 F.3d 1446, 1460 (9th Cir. 1994) (finding evidence of counsel's pattern of misconduct directly refuted state's argument that counsel's failure to interview witness was based on a strategic decision of how best to represent his client; disciplinary record documented course of conduct showing counsel was completely indifferent to his clients and did nothing to protect his client's interests); see generally Young v. Runnels, 435 F.3d 1038, 1043 (9th Cir. 2006) ("if the discipline rendered [by State Bar] is indicative of counsel's substandard abilities, then that deficiency should be manifested in counsel's courtroom behavior and trial conduct"), cert. denied, 549 U.S. 1033 (2006). In petitioner's case, viewed as of the time of counsel's representation, the record supports a finding that counsel subjected the prosecution's case to meaningful adversarial testing by focusing on the strength of the evidence implicating petitioner in the charged crimes rather than trying to present an alibi defense. See RT 4297 (counsel resting "on the state of the evidence" without presenting any defense witnesses); Strickland, 466 U.S. at 690.

Finally, for the reasons cited in Report and Recommendation, the Court finds that even if counsel may have been deficient for failing to present petitioner's alibi defense, petitioner has not shown a reasonable probability of a different outcome at trial if the jury had been presented with petitioner's alibi witnesses. (R&R at 85-86).

///
///
///

9

## III. ORDERS

IT IS THEREFORE ORDERED that the Petition is denied, this action is dismissed with prejudice and Judgment be entered accordingly.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on petitioner and on respondent's counsel.

IT IS SO ORDERED.

DATED: June 28, 2019



_____
HONORABLE ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE